IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES HANSHAW, et al.,

                Plaintiffs,

v.                                     CIVIL ACTION NO.   2:14-cv-28042

WELLS FARGO BANK, N.A., et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Wells Fargo Bank, N.A. and Deutsche Bank National Trust's Motion to Dismiss Plaintiffs' Complaint (the "Motion to Dismiss"), (ECF No. 6), and Defendants Wells Fargo and Deutsche Bank National Trust's Motion to Stay Discovery Pending Ruling on Defendants' Motion to Dismiss (the "Motion to Stay"),[1] (ECF No. 21). For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss and **DENIES AS MOOT** the Motion to Stay.

### *I.  Background*

This case arises out of a home loan (the "Loan") Plaintiffs received from Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Plaintiffs are residents of Kanawha County, West Virginia. (ECF No. 1 ¶ 8.) "Defendant Wells Fargo is a foreign corporation authorized to do business and doing business in West Virginia, including Kanawha County." (*Id.* ¶ 10.) Defendant Deutsche

---

[1] Defendants entitled the Motion to Stay as "Defendants' [sic] Wells Fargo and Deutsche Bank National Trust's Motion to Stay Discovery Pending Rulding [sic] on Defendants' Motion to Dismiss." (ECF No. 21 at 1.)

Bank National Trust as trustee for ABFC Asset Back Securities Trust Series 2005-WF1 ("Deutsche Bank") "is the current holder of Plaintiffs' [Loan]." (*Id.* ¶ 11.)

The Complaint alleges that "[i]n or around late 2004, Plaintiffs sought refinancing of their home with a mailing address of Route 5, Box 342G, Charleston, West Virginia, 25320." (*Id.* ¶ 12.) "In connection with this refinancing, Mark Greenlee of Greenlee Appraisals, Inc. . . . appraised the subject property on October 21, 2004 and reported that it had a market value of $93,400.00" (the "Appraisal"). (*Id.* ¶ 13.) However, according to the Complaint, "[a]t the time of the [Appraisal] and the subsequent execution of the [Loan], Plaintiffs' property had a value no greater than $49,000.00." (*Id.* ¶ 14.)

The Complaint avers that, "[i]n or around December 2004, [Defendant] Wells Fargo offered Plaintiffs a loan of $81,000.00 based on reliance of [the Appraisal]." (*Id.* ¶ 16.) Plaintiffs entered into a contractual agreement with Defendant Wells Fargo regarding the Loan (the "Loan Agreement") on December 23, 2004. (*See id.* ¶ 17 ("The closing of the [Loan] occurred on December 23, 2004.").) According to the Complaint, "[t]he closing [of the Loan] was rushed and occurred without [Plaintiffs having] the assistance of a lawyer." (*Id.* ¶ 18.) The Complaint alleges that, "[a]t closing, Plaintiffs were presented with a fixed rate loan at 9.54% interest rate with a term of 15 years in contrast to the loan offer than had been previously disclosed to them at 4.5%." (*Id.* ¶ 19.) The Complaint also avers that "Plaintiffs expressed concern that they would be unable to afford their monthly payments," but "Plaintiffs were assured that the loan would be adjusted to include the previously offered 6.9% interest rate." (*Id.* ¶¶ 20–21.) The Complaint alleges that, "in reliance upon this" representation, Plaintiffs "entered into [the Loan] on or about December 23, 2004." (*Id.* ¶ 22.)

"Plaintiffs fell behind on their payments" under the Loan "and were forced to seek bankruptcy protection on September 27, 2010." (*Id.* ¶ 23.) On August 29, 2011, Plaintiffs discharged their personal obligation regarding their debt under the Loan (the "Loan Debt") through these bankruptcy proceedings.[2] (*See In re Charles Lyndon Hanshaw & Charlotte Sue Hanshaw*, 2:10-bk-20918, ECF No. 14 (Bankr. S.D. W. Va. Oct. 12, 2010) (providing the "Schedule D – Creditors Holding Secured Claims," which lists the Loan as a secured claim in Plaintiffs' bankruptcy proceedings); *id.*, ECF No. 108 (constituting the order granting Plaintiffs "a discharge under section 727 of title 11, United States Code . . . (the Bankruptcy Code)").)

According to the Complaint, "Plaintiffs asked [Defendant] Wells Fargo to modify their loan" and "entered into trial payment plans" (the "Loan-Modification Agreements") "at least five different times." (ECF No. 1 ¶¶ 24–25.) The Complaint alleges that "each time after Plaintiffs made several payments . . . pursuant to the trial plan, [Defendant] Wells Fargo . . . reject[ed] the loan modification." (*Id.* ¶ 26.) The Complaint also avers that "Wells Fargo rejected payments" from Plaintiffs "[d]uring the course of servicing [the Loan]." (*Id.* ¶ 27.) The Complaint further alleges that "Plaintiffs . . . believe that [Defendant] Wells Fargo charged them additional fees and costs." (*Id.* ¶ 28.) Finally, the Complaint alleges that, "[a]s a result of Defendants' actions, Plaintiffs suffered monetary loss, incidental, consequential, actual and compensatory damages, and emotional and mental distress, loss of use, aggravation, anxiety, annoyance and inconvenience." (*Id.* ¶ 30.)

---

[2] The filings evidencing Plaintiffs' discharge of the Loan Debt are not a part of the record in this case. Nonetheless, as these filings are a matter of public record, the Court takes judicial notice of these documents. *See, e.g., Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that a court may "properly take judicial notice of matters of public record" (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004))).

On November 13, 2014, Plaintiffs filed the Complaint, which includes both common-law claims and causes of action pursuant to the West Virginia Consumer Credit and Protection Act (the "WVCCPA"). (ECF No. 1.) In particular, the Complaint provides the following eleven claims for relief: (1) Count I—"Unconscionable Contract" against Defendant Wells Fargo, (*id.* ¶¶ 31–36); (2) Count II—"Assignee Liability," which alleges that Defendant Deutsche Bank holds assignee liability for the remaining claims of the Complaint pursuant to West Virginia Code § 46A-2-102, (*id.* ¶¶ 37–39); (3) Count III—"Fraud and Conspiracy," (*id.* ¶¶ 40–47); (4) Count IV—"Illegal Fees" pursuant to West Virginia Code § 46A-2-115, (*id.* ¶¶ 48–49); (5) Count V—"Violations of the WVCCPA" pursuant to West Virginia Code §§ 46A-2-127 and 46A-2-128(e), (*id.* ¶¶ 50–52); (6) Count VI—"Breach of Contract – Deed of Trust," (*id.* ¶¶ 53–60); (7) Count VII—"Breach of Contract – Payment Plan," (*id.* ¶¶ 61–67); (8) Count VIII—"Estoppel," (*id.* ¶¶ 68–72); (9) Count IX—"Negligence," (*id.* ¶¶ 73–81); (10) Count X—"Negligent and/or Fraudulent Misrepresentations in Debt Collection" pursuant to West Virginia Code § 46A-2-127, (*id.* ¶¶ 82–91); and (11) Count XI—"Refusal to Provide Account Statement" pursuant to West Virginia Code §§ 46A-2-114(2) and 46A-2-115(d), (*id.* ¶¶ 92–94). The Complaint requests a wide array of relief, including (1) declaratory and equitable relief; (2) actual, compensatory, incidental, and punitive damages; (3) statutory penalties pursuant to the WVCCPA; (4) pre and post-judgment interest; and (5) attorney's fees and costs. (*Id.* at 11–12.)

On December 2, 2014, Defendants filed the Motion to Dismiss. (ECF No. 6.) Plaintiffs filed their opposition briefing on December 16, 2014, (ECF No. 10), and Defendants filed their reply briefing on January 2, 2015, (ECF No. 13).

On July 24, 2015, Defendants filed the Motion to Stay, in which they request that the Court stay the discovery in this case pending its ruling on the Motion to Dismiss. (ECF No. 21.) Plaintiffs filed their opposition briefing for this motion on August 7, 2015, (ECF No. 24), and Defendants filed their reply briefing on August 12, 2015, (ECF No. 25).

The Motion to Dismiss and the Motion to Stay are thus fully briefed and ready for disposition.

## II. *Legal Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's

complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

### III.  Extraneous Evidence

As a threshold matter, the Court notes that the briefing associated with the Motion to Dismiss includes references to facts and documents outside of the Complaint. (*See* ECF No. 7; ECF No. 10; ECF No. 13.) Defendants also attached the following exhibits to the Memorandum in Support of their Motion to Dismiss: (1) the docket sheet for the bankruptcy proceedings in *In re Charles Lyndon Hanshaw & Charlotte Sue Hanshaw*, 2:10-bk-20918 (Bankr. S.D. W. Va.), which lists Charles Lyndon Hanshaw as the "Debtor" and Charlotte Sue Hanshaw as the "Joint Debtor," (ECF No. 7, Ex. A); (2) the docket sheet for another case assigned to this Court—*Hanshaw v. Wells Fargo Bank, N.A.*, Civil Action No. 2:11-cv-00331 (S.D. W. Va.), (*id.*, Ex. B); (3) this Court's Memorandum Opinion and Order entered on August 14, 2014 in *Hanshaw v. Wells Fargo Bank, N.A.*, Civil Action No. 2:11-cv-00331 (S.D. W. Va.), (*id.*, Ex. C); and (4) a number of unpublished cases, (*id.*, Exs. D & E).

The Court must first determine which factual assertions and documents to consider when ruling on the Motion to Dismiss. A court typically "cannot consider allegations made outside of the pleadings" when considering a motion to dismiss. *Cunningham Energy, LLC v. Outman*, Civil Action No. 2:13–cv–20748, 2013 WL 5274361, at *4 (S.D. W. Va. Sept. 18, 2013) (citation omitted). However, a court "may . . . consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

A court may also "properly take judicial notice of matters of public record." *Id.* (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)); *see, e.g.*, *Watkins v. Wells Fargo Bank*, Civil Action No. 3:10–1004, 2011 WL 777895, at *3 (S.D. W. Va. Feb. 28, 2011) ("[B]oth the Supreme Court of the United States and the Fourth Circuit have found that courts may take judicial notice of items or matters in the public record, even at the 12(b)(6) stage of a proceeding." (citing *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986) and *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007))).

"If, on a motion [to dismiss] under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal Rule of Civil Procedure] 56." Fed. R. Civ. P. 12(d). However, "a motion to dismiss under Rule 12(b)(6) will not automatically convert into a motion for summary judgment under Rule 56 simply because the parties present materials outside of the pleadings." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996–97 (4th Cir. 1997)). "Instead, in order to complete such a conversion, 'the district court [must] . . . indicat[e] that it will not exclude from its consideration of the motion the supporting extraneous materials.'" *Id.* (alterations in original) (quoting *Finley*, 109 F.3d at 997); *see also Finley*, 109 F.3d at 996 ("[C]onversion takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude extraneous matters." (quoting *Aamot v. Kassel*, 1 F.3d 441, 445 (6th Cir. 1993))).

In this case, the exhibits attached to Defendants' Memorandum in Support of their Motion to Dismiss are all matters of public record. (*See* ECF No. 7, Exs. A–E.) Accordingly, the Court takes judicial notice of these documents without converting the Motion to Dismiss into a motion

for summary judgment. *See, e.g.*, *Watkins*, 2011 WL 777895, at *13 n.9 (taking "judicial notice of the docket sheet, petition, discharge order, and schedules associated with [the plaintiff's] bankruptcy proceeding"); *Savary v. Cody Towing & Recovery, Inc.*, Civil Action No. DKC 10–2159, 2011 WL 337345, at *7 n.6 (D. Md. Jan. 31, 2011) ("The court may take judicial notice of 'the records of a court of record,' including a docket sheet." (quoting *Lolavar v. de Santibanes*, 430 F.3d 221, 225 n.2 (4th Cir. 2005))).

The extraneous factual assertions in the parties' briefing are a different matter. The Court declines the parties' invitations to consider factual assertions outside of the Complaint. *See, e.g.*, *Outman*, 2013 WL 5274361, at *4 (noting that a court typically "cannot consider allegations made outside of the pleadings" when considering a motion to dismiss). Instead, the Court will rely on the factual allegations in the Complaint, which—for purposes of the present Motion to Dismiss—are "accepted as true." *See, e.g.*, *Iqbal*, 556 U.S. at 678.

### IV.  Statutes of Limitations

Defendants first argue that most of the Complaint's claims are barred by applicable statutes of limitations. (ECF No. 7 at 4–6.) For the reasons that follow, the Court disagrees.

"Statutes of limitations . . . are mechanisms used to limit the temporal extent or duration of liability," *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014), and "are among the universally familiar aspects of litigation considered indispensable to any scheme of justice," *Felder v. Casey*, 487 U.S. 131, 140 (1988). "[T]he ultimate purpose of a statute of limitations is to ensure that causes of action be brought within a reasonable period of time." *Delebreau v. Bayview Loan Servicing, LLC*, 680 F.3d 412, 415 (4th Cir. 2012) (citing *Perdue v. Hess*, 484 S.E.2d 182, 186 (W. Va. 1997)). "Statute[s] of limitations . . . reflect[] legislative purposes of encouraging promptness

in the initiation of claims, and of avoiding stale claims, inconvenience, and fraud that may result from the untimely assertion of such claims." *Id.* (citing *Davey v. Estate of Haggerty*, 637 S.E.2d 350, 355 (W. Va. 2006)); *see also Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (stating that "the general purpose of statutes of limitations [is] 'to protect defendants against stale or unduly delayed claims" (quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008))).

"An assertion that a claim is time-barred is an affirmative defense that a defendant—not a plaintiff—must prove." *Burgess v. Infinity Fin. Emp't Servs., LLC*, Civil Action No. 2:11–cv–00946, 2012 WL 399178, at *5 (S.D. W. Va. Feb. 7, 2012) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)); *see also John R. Sand & Gravel Co.*, 552 U.S. at 133 ("[T]he law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver." (citations omitted)); *Burgess*, 2012 WL 399178, at *5 ("In the context of a motion to dismiss, assertion of an affirmative defense, like a statute of limitations defense, presents a particular 'procedural stumbling block' for defendants." (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993))). "[T]esting the sufficiency of a complaint by a motion to dismiss generally will not reach the merits of an affirmative defense based upon the statute of limitations unless 'facts sufficient to rule on an affirmative defense are alleged in the complaint[.]'" *Kennedy v. BAC Home Loans Servicing, LP*, Civil Action No. 3:13–11401, 2013 WL 5274365, at *3 (S.D. W. Va. Sept. 18, 2013) (second alteration in original) (quoting *Burgess*, 2012 WL 399178, at *6); *see also Forst*, 4 F.3d at 250 ("In the limited circumstances where the allegations of the complaint give rise

to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." (citations omitted)).

"Federal courts sitting in diversity"—as the Court is in the instant case—"apply state statutes of limitations to state law claims." *Litten v. Quicken Loans, Inc.*, Civil Action No. 1:13CV192, 2013 WL 6001256, at *3 (N.D. W. Va. Nov. 12, 2013) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980)). In *Dunn v. Rockwell*, the Supreme Court of Appeals of West Virginia provided the following "five-step analysis" that courts "should appl[y] to determine whether a cause of action is time-barred" under West Virginia law:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action . . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

689 S.E.2d 255, 265 (W. Va. 2009). "Only the first step" in the *Dunn* analysis "is a pure question of law." *Robinson v. Quicken Loans Inc.*, 988 F. Supp. 2d 615, 625 (S.D. W. Va. 2013) (citing *Dunn*, 689 S.E.2d at 265).

Defendants argue that all of the Complaint's claims pursuant to the WVCCPA—Counts I,[3] IV, V, X, and XI—are barred by the applicable statute of limitations. (ECF No. 7 at 4–6; ECF No.

---

[3] Count I (unconscionable contract) does not specify whether it is a common-law claim, or a claim brought pursuant to the WVCCPA. (*See* ECF No. 1 ¶¶ 31–36.) For purposes of the present Motion to Dismiss, the Court construes it as constituting both WVCCPA and common-law causes of action. *See, e.g.*, W. Va. Code § 46A-2-121 (providing a cause of action for "unconscionability" and "inducement by unconscionable conduct"); *Bishop v. Quicken Loans, Inc.*,

13 at 2–5.) Defendants also argue that three of the Complaint's common-law claims—Counts III, VIII, and IX—are similarly barred by the statute of limitations applicable to those claims. (ECF No. 7 at 4–6; ECF No. 13 at 2–5.) The Court addresses each argument, in turn.

**A.      Statute of Limitations Applicable to the Complaint's WVCCPA Claims**

The Complaint includes five claims pursuant to the WVCCPA— Counts I, IV, V, X, and XI. (ECF No. 1 ¶¶ 31–36, 48–52, 82–94.) Defendants argue that these claims are barred "by the one-year statute of limitation found in [West Virginia] Code § 46A-5-101(1)." (ECF No. 7 at 4.) Plaintiffs respond that "Defendants misstate [the applicable] statute of limitations" and argue that "the statute of limitations is four years or one year after the last scheduled payment, whichever is longer." (ECF No. 10 at 5–6 (citations omitted).)

The first issue is identifying the appropriate statute of limitations for the Complaint's WVCCPA claims. *See Dunn*, 689 S.E.2d at 265. "Section 46A-5-101 of the West Virginia Code provides consumers with a private right of action against a person who violates the provisions of the WVCCPA." *Delebreau v. Bayview Loan Servicing, LLC*, 770 F. Supp. 2d 813, 819 (S.D. W. Va. 2011). "Section 46A-5-101 contains two different limitation periods for consumer causes of action," *id.*, and provides the following, in pertinent part:

> With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.

Civil Action No. 2:09–1076, 2011 WL 1321360, at *4–6 (S.D. W. Va. Apr. 4, 2011) (discussing common-law unconscionability claims under West Virginia law).

11

W. Va. Code § 46A-5-101(1) (1996).[4]

In *Kennedy v. BAC Home Loans Servicing, LP*, Chief Judge Chambers addressed whether

the four-year statute of limitations in Section 46A-5-101(1) applies to a home loan similar to the

Loan here and provided the following pertinent discussion:

> [The plaintiffs] . . . argue . . . that the [c]ourt should consider the four-year statute of
> limitations contained in § 46A-5-101 as applying to this case. This part of the
> provision provides: "With respect to violations arising from consumer credit sales
> or consumer loans made pursuant to revolving charge accounts or revolving loan
> accounts, or from sales as defined in article six of this chapter, no action pursuant to
> this subsection may be brought more than four years after the violations occurred."
> W. Va. Code § 46A-5-101(1). Clearly, Plaintiffs' mortgage was not a revolving
> charge account or revolving loan. . . . Article six defines a sale as: "any sale, offer
> for sale or attempt to sell any goods for cash or credit or any services or offer for
> services for cash or credit." W. Va.Code § 46A-6-102(5). Chapter 46A defines
> "goods" as "goods not in existence at the time the transaction is entered into and
> gift and merchandise certificates, but excludes money, chattel paper, documents of
> title and instruments." W. Va. Code § 46A-1-102(21). Chapter 46A also defines
> "services" as "(a) Work, labor and other personal services; (b) privileges with
> respect to transportation, use of vehicles, hotel and restaurant accommodations,
> education, entertainment, recreation, physical culture, hospital accommodations,
> funerals, cemetery accommodations, and the like; and (c) insurance." W. Va. Code
> § 46A-1-102(47). As [the plaintiffs'] mortgage does not fall within these
> definitions, the [c]ourt declines to find that the four-year statute of limitations
> contained within § 46A-5-101 applies.

Civil Action No. 3:13–5274365, 2013 WL 5274365, at *5 (S.D. W. Va. Sept. 18, 2013). Chief

Judge Chambers then found that the one-year statute of limitations provided in Section

46A-5-101(1) was applicable to the plaintiffs' claims under the WVCCPA. *Id.*

---

[4] The Court notes that the West Virginia legislature recently amended West Virginia Code § 46A-5-101(1) by
eliminating the one-year statute of limitations for alleged "violations arising from other consumer credit sales or
consumer loans." *See* Act effective June 12, 2015, ch. 63, art. 5, § 46A-5-101(1), 2015 W. Va. Laws. Effective June
12, 2015, Section 46A-5-101(1) now provides the following, in relevant part: "With respect to violations arising from
consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than four years
after the violations occurred." W. Va. Code § 46A-5-101(1) (2015). As the amended statute of limitations provided in
the current version of Section 46A-5-101(1) became effective following Plaintiffs filing the Complaint, the Court will
utilize the pre-June 12, 2015 statute-of-limitations language of this Section in the present analysis. *See, e.g., Loveless
v. State Workmen's Comp. Comm'r*, 184 S.E.2d 127, 128 (W. Va. 1971) ("Statutes of limitations are no exception to
the rule that statutes are [p]rima facie to be given only prospective [o]peration." (quoting *State v. Mines*, 18 S.E. 470,
470 (W. Va. 1893))).

The Court concurs with Chief Judge Chambers' statute-of-limitations discussion in *Kennedy*. The Loan is clearly not a "revolving charge account[] or revolving loan account[]." Similarly, the Loan is not a "sale," as defined by the WVCCPA. *See* W. Va.Code § 46A-6-102(5). As such, the Court finds that the four-year statute of limitations provided in Section 46A-5-101(1) does not apply to the Loan. Instead, the Court will apply the one-year statute of limitation provided in that Section. *See* W. Va. Code § 46A-5-101(1).

The next issue is identifying when this statute of limitations began to run. *See Dunn*, 689 S.E.2d at 265. Under the one-year limitations period in Section 46A-5-101(1), the statute of limitations begins to run at "the due date of the last scheduled payment of the agreement." "However, if the periodic payments are accelerated under the terms of the agreement, causing all payments to become immediately due and payable by the consumer, then the statute of limitation begins to run on the date when the accelerated payment is due." *Tribeca Lending Corp. v. McCormick*, 745 S.E.2d 493, 495 (W. Va. 2013); *accord Delebreau*, 680 F.3d at 415–16; *Kennedy*, 2013 WL 5274365, at *5.

In this case, the record is wholly deficient as to when the one-year statute of limitations period for Plaintiffs' WVCCPA claims began to run. The Complaint provides that Plaintiffs entered into the Loan Agreement with Defendant Wells Fargo "on December 2004." (ECF No. 1 ¶ 17.) However, the Complaint provides no allegations regarding the due date of the last scheduled payment under the Loan Agreement, or that Defendants accelerated these payments. (*See* ECF No. 1.) Furthermore, neither party filed the Loan Agreement with their pleadings or subsequent motion practice. Given this sparse record, the Court cannot determine when the statute of limitations began to run and, correspondingly, whether that period elapsed prior to Plaintiffs filing the

13

Complaint. *Cf. Kennedy*, 2013 WL 5274365, at *3 ("[T]esting the sufficiency of a complaint by a motion to dismiss generally will not reach the merits of an affirmative defense based upon the statute of limitations unless 'facts sufficient to rule on an affirmative defense are alleged in the complaint[.]'" (second alteration in original) (quoting *Burgess v. Infinity Fin. Emp't Servs., LLC*, Civil Action No. 2:11–cv–00946, 2012 WL 399178, at *6 (S.D. W. Va. Feb. 7, 2012))).

Defendants nonetheless argue that the Court should look beyond the Complaint and find that the statute of limitations for Plaintiffs' WVCCPA claims began "running as of April 13, 2011, when their first [c]omplaint was filed." (ECF No. 7 at 5.) According to Defendants, "[i]n the first action Plaintiffs filed against Defendants on April 13, 2011, Plaintiffs asserted or could have asserted the same claims for which Plaintiffs now seek redress." (ECF No. 13 at 2.) Defendants argue that the Complaint's WVCCPA claims are therefore time-barred because "the current Complaint was filed on November 13, 2014, more than three years" after Plaintiffs filed the first complaint. (*Id.*)

The Court is not persuaded by this argument. At the motion to dismiss stage, the Court will only dismiss claims based on a statute-of-limitations affirmative defense if "facts sufficient to rule on [this] affirmative defense are alleged in the complaint." *Kennedy*, 2013 WL 5274365, at *3 (quoting *Burgess*, 2012 WL 399178, at *6). Plaintiffs' allegations or claims in their first complaint—which is not a part of the record in this case—are immaterial to this analysis. *See, e.g.*, *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." (citations omitted)). The Court will not infer a date that the statute of limitations began

to run on Plaintiffs' WVCCPA claims based on allegations or claims that Plaintiffs may or may not have included in their first complaint against Defendants. *See, e.g.*, *Rawls v. Associated Materials, LLC*, Civil Action No. 1:10–cv–01272, 2011 WL 3297622, at *4 (S.D. W. Va. Aug. 1, 2011) ("The United States Court of Appeals for the Fourth Circuit has held that a district court may address an affirmative defense on a 12(b)(6) motion to dismiss, but only 'if all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007))).

The Court thus finds that Defendants fail to meet their burden to establish that Plaintiffs' WVCCPA claims are time-barred by the statute of limitations provided in West Virginia Code § 46A-5-101(1).[5] *Cf. Burgess*, 2012 WL 399178, at *5 ("An assertion that a claim is time-barred is an affirmative defense that a defendant—not a plaintiff—must prove." (citing *Goodman*, 494 F.3d at 464)). Accordingly, the Court **DENIES** the Motion to Dismiss insofar as it seeks dismissal of the Complaint's WVCCPA claims—Counts I, IV, V, X, and XI—on the grounds that they are time-barred.

---

[5] Defendants provide the following statement in their reply briefing in support of the Motion to Dismiss:

> It is not Defendants' burden to guess when the alleged wrongs occurred. Plaintiffs are essentially arguing that, because they did not specify the point in time that the violations occurred, it cannot be determined when the statute of limitations commenced. Their request to amend the Complaint to add detail of violations is a concession that the current factual allegations are deficient.

(ECF No. 13 at 2 n.1) The Court notes that this statement misapprehends the applicable case law. As noted above, it is Defendants' burden to prove that a claim is barred by a statute of limitations. *Burgess*, 2012 WL 399178, at *5 (citing *Goodman*, 494 F.3d at 464). Furthermore, "[i]n the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Forst*, 4 F.3d at 250 (citations omitted). As such, the Court rejects Defendants' arguments regarding (1) the placement of the burden in this analysis; and (2) the permissible inferences the Court may draw from factual deficiencies in the Complaint when considering Defendants' statute-of-limitations arguments.

15

B.      **Statute of Limitations Applicable to the Common-Law Claims in Counts III, VIII, and IX**

Defendants next argue that three of the Complaint's common-law claims—Counts III (fraud and conspiracy), VIII (estoppel),[6] and IX (negligence)—are time-barred by the "two-year statute of limitations found in [West Virginia] Code § 55-2-12." (ECF No. 7 at 5.) The Court again disagrees.

The Court shall again first identify the applicable statute of limitations for these three claims. *See Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009). As Defendants correctly note, the statute of limitations for Counts III (fraud and conspiracy) and IX (negligence) is provided in West Virginia Code § 55-2-12.[7] *See, e.g.*, *Robinson v. Quicken Loans Inc.*, 988 F. Supp. 2d 615, 632 (S.D. W. Va. 2013) ("The applicable statute of limitations for a cause of action under fraud is the two-year . . . period contained in West Virginia Code § 55-2-12." (citing *Trafalgar House Constr., Inc. v. ZMM, Inc.*, 567 S.E.2d 294 (W. Va. 2002))); *Trafalgar House*, 567 S.E.2d at 299 ("Under West Virginia law, claims in tort for negligence . . . are governed by a two-year statute of limitation." (citing W. Va. Code § 55-2-12)). Section 55-2-12 provides "general 'catch-all' periods

---

[6] Defendants suggest that "[e]stoppel has not been recognized as an independent cause of action under West Virginia law." (ECF No. 7 at 5 n.3.) However, as noted by Judge Copenhaver in a case involving one of the Defendants in the present action, "[t]he Supreme Court of Appeals of West Virginia has treated equitable estoppel as a viable cause of action." *Holtzapfel v. Wells Fargo Bank, N.A.*, Civil Action No. 2:12–00937, 2013 WL 1337283, at *5 (S.D. W. Va. Mar. 29, 2013) (citing *Folio v. City of Clarksburg*, 655 S.E.2d 143, 148 (W. Va. 2007) and *Cleaver v. Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438, 443–45 (W. Va. 1998)).

[7] The parties do not provide any case law expressly addressing the statute of limitations for the Complaint's estoppel claim. (*See* ECF No. 7 at 4–6; ECF No. 10 at 5–10; ECF No. 13 at 2–5.) The Court is also unable to locate case law specifically establishing the statute of limitations for this cause of action. *Cf. Dunn*, 689 S.E.2d at 267 ("[I]f a particular cause of action sounds in both equity and law, then a trial court should apply a statute of limitation to that particular cause of action. Likewise, if a lawsuit involves causes of action that sound in equity, and other causes of action in law, only the causes of action sounding in law would be subject to statutes of limitation."). Nonetheless, as discussed herein, the Court finds that the record is insufficient to determine whether this claim—or any other claim in the Complaint challenged by Defendants on statute-of-limitations grounds—is time-barred. As such, the Court need not elaborate as to the statute of limitations applicable to the Complaint's estoppel claim (Count VIII).

16

of limitation," *Vorholt v. One Valley Bank*, 498 S.E.2d 241, 246 (W. Va. 1997), and states the

following, in pertinent part:

> Every personal action for which no limitation is otherwise prescribed shall be
> brought . . . within two years next after the right to bring the same shall have
> accrued if it be for damages for personal injuries . . . .

W. Va. Code § 55-2-12(b).

Under the *Dunn* analysis, the Court next addresses the accrual date for these claims and the

potential applicability of the discovery rule. *See Dunn*, 689 S.E.2d at 265. "[T]he general rule" is

that "the statute of limitations . . . begins to run when the right to bring an action . . . accrues."

*Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119, 124 (W. Va. 2007) (citation omitted); *see, e.g.*,

*Stuyvesant v. Preston Cty. Comm'n*, 678 S.E.2d 872, 876 (W. Va. 2009) ("This Court has held that,

'[g]enerally, a cause of action accrues (i.e., the statute of limitations begins to run) when a tort

occurs . . . .'" (alteration in original) (quoting *Cart v. Marcum*, 423 S.E.2d 644, 645 (W. Va. 1992),

*overruled on other grounds by Dunn*, 689 S.E.2d 255)). However, "under the discovery rule, the

statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his

claim." *Stuyvesant*, 678 S.E.2d at 876 (citation omitted); *see also Beattie v. Skyline Corp.*, 906 F.

Supp. 2d 528, 540 (S.D. W. Va. 2012) ("While the statute of limitations generally begins to run

when the injury occurs, under the discovery rule, the statute of limitations is tolled until the

individual discovers or could have discovered the alleged defect with reasonable diligence."

(citing *Univ. of W. Va. Bd. of Trs. v. Van Voorhies*, 84 F. Supp. 2d 759, 768 (N.D. W. Va. 2000))).

"[W]hether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test." *Dunn*, 689

S.E.2d at 265. "The plaintiff is charged with knowledge of the factual, rather than the legal, basis

for the action." *Id.* "This objective test focuses upon whether a reasonable prudent person would

have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." *Id.*

The Court finds that the record lacks the necessary information to determine that Counts III, VIII, and IX are barred by the applicable statutes of limitation. Counts VIII (estoppel) and IX (negligence) pertain to Defendants' alleged representations to Plaintiffs following the closing of the Loan. (*See* ECF No. 1 ¶¶ 68–81.) However, the Complaint does not provide any information as to the dates when these representations occurred. (*See* ECF No. 1.) The absence of this necessary information in the Complaint is fatal to Defendants' statute-of-limitation argument regarding these two claims. *See, e.g.*, *Rawls v. Associated Materials, LLC*, Civil Action No. 1:10–cv–01272, 2011 WL 3297622, at *4 (S.D. W. Va. Aug. 1, 2011) (noting that "a district court may [only] address an affirmative defense on a 12(b)(6) motion to dismiss if all facts necessary to the affirmative defense clearly appear on the face of the complaint" (citation omitted)).

Count III (fraud and conspiracy), in turn, relates to Defendant Wells Fargo's use of the purportedly fraudulent Appraisal in offering the Loan to Plaintiffs. (*See* ECF No. 1 ¶¶ 40–47.) However, the Complaint does not provide when Plaintiffs discovered this alleged fraud. (*See* ECF No. 1.) As such, the Court cannot determine whether the discovery rule operates to make this claim timely.[8] *Cf. Clemens v. Soyoola*, Civil Action No. 2:11–00457, 2011 WL 5975893, at *4 (S.D. W. Va. Nov. 29, 2011) (stating that, in order for a court to find that the discovery rule does not apply

---

[8] Count I (unconscionable contract) alleges that Defendant "Wells Fargo fraudulently induced Plaintiffs to enter into" the Loan Agreement and "[t]he terms of the [Loan Agreement] constituted an unfair surprise to Plaintiffs." (ECF No. 1 ¶¶ 33–35.) The Court finds that, insofar as Count I constitutes a common-law claim, the record is similarly insufficient to establish that it is time-barred because the Complaint does not provide when Plaintiffs discovered or should have discovered Defendants' alleged wrongdoing. (*See* ECF No. 1.) As such, the Court **DENIES** the Motion to Dismiss, insofar as it argues that the common-law unconscionability claim in Count I is time-barred. *See, e.g.*, *Clemens*, 2011 WL 5975893, at *4.

and dismiss claims as time-barred, "the facts necessary to determine the applicability of the discovery rule must clearly appear on the face of the complaint").

"Since the [C]ourt is missing crucial information related to" the timing of the events related to these claims, "the [C]ourt finds that a determination of timeliness is best left to a later date, once the facts of the case are better developed."[9] *Rawls*, 2011 WL 3297622, at *4; *see also Clemens*, 2011 WL 5975893, at *4 (denying the "defendant's motion to dismiss on the basis of the statute of limitations" where "[f]undamental questions with respect to the applicability of the discovery rule, such as whether [the] plaintiff knew or with the exercise of reasonable diligence should have known of her injury, remain unanswered and await discovery"). Accordingly, the Court **DENIES** the Motion to Dismiss, insofar as it argues that Counts III, VIII, and IX are barred by the applicable statute of limitations.[10]

### V.  *Standing Under the WVCCPA*

Defendants next argue that the Court should dismiss the Complaint's WVCCPA causes of action—Counts I, IV, V, X, and XI—because "[w]hen Plaintiffs received their bankruptcy discharge, they were relieved of their personal obligation to repay the [Loan Debt] and became

---

[9] Defendants also argue that the Court should infer the requisite timing information from Plaintiffs' complaint in the first case to make a statute-of-limitations determination as to Counts III, VIII, and IX. (*See* ECF No. 7 at 5–6.) For the reasons discussed above, the Court declines to consider this evidence, which is immaterial to the instant statute-of-limitations analysis. *See, e.g.*, *Kennedy v. BAC Home Loans Servicing, LP*, Civil Action No. 3:13–11401, 2013 WL 5274365, at *3 (S.D. W. Va. Sept. 18, 2013) ("[T]esting the sufficiency of a complaint by a motion to dismiss generally will not reach the merits of an affirmative defense based upon the statute of limitations unless 'facts sufficient to rule on an affirmative defense are alleged in the complaint[.]'" (second alteration in original) (quoting *Burgess v. Infinity Fin. Emp't Servs., LLC*, Civil Action No. 2:11–cv–00946, 2012 WL 399178, at *6 (S.D. W. Va. Feb. 7, 2012))).

[10] As the Court finds—for purposes of the Motion to Dismiss—that the Complaint's claims are not time-barred, it does not reach Plaintiffs' argument that they "should be permitted to pursue their unconscionable contract claim (Count I) and related claims of fraud and conspiracy (Count II) [sic] as defenses to such a foreclosure action." (ECF No. 10 at 7–10.) However, the Court notes that Plaintiffs are not defending a foreclosure action in this case. Rather, they instituted the instant litigation. (*See* ECF No. 1 (constituting Plaintiffs' Complaint).)

excluded from the definition of 'consumer' under the WVCCPA."[11]  (ECF No. 7 at 6.) The Court

agrees, in part.

"The WVCCPA is a 'comprehensive consumer protection' law that incorporates elements

of the Uniform Consumer Credit Code, the National Consumer Act, and older West Virginia

statutes." *Countryman v. NCO Fin. Sys., Inc.*, Civil Action No. 5:09–cv–00288, 2009 WL

1506720, at *2 (S.D. W. Va. May 27, 2009). "Among its numerous provisions . . . are restrictions

on the manner in which debt collectors may attempt to collect debts." *Id.*; *see also Snuffer v. Great*

*Lakes Educ. Loan Servs., Inc.*, Civil Action No. 5:14–cv–25899, 2015 WL 1275455, at *7 (S.D.

W. Va. Mar. 19, 2015) ("[T]he WVCCPA is a detailed statute that describes factual scenarios

constituting a violation of each provision."). In *State ex rel. McGraw v. Scott Runyan*

*Pontiac-Buick, Inc.*, the Supreme Court of Appeals of West Virginia indicated that Courts should

broadly construe the WVCCPA's provisions:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and
> deceptive acts or practices by providing an avenue of relief for consumers who
> would otherwise have difficulty proving their case under a more traditional cause
> of action. As suggested by the court in *State v. Custom Pools,* 150 Vt. 533, 536, 556
> A.2d 72, 74 (1988), it must be our primary objective to give meaning and effect to
> this legislative purpose. Where an act is clearly remedial in nature, we must
> construe the statute liberally so as to furnish and accomplish all the purposes
> intended.

461 S.E.2d 516, 523 (W. Va. 1995) (citations omitted); *see also Harper v. Jackson Hewitt, Inc.*,

706 S.E.2d 63, 72 (W. Va. 2010) ("[T]he [WVCCPA] is a remedial statute intended to protect

consumers from unfair, illegal and deceptive business practices, and must be liberally construed to

accomplish that purpose." (citations omitted)).

---

[11] Count II of the Complaint is an assignee liability claim, which alleges that the "note arises from a consumer credit sale as defined under [*West Virginia*] *Code* § 46A-2-102." (ECF No. 1 ¶ 38.) Defendants do not move to dismiss this claim on the grounds that Plaintiffs lack standing to bring WVCCPA claims. (*See* ECF No. 7 at 6–8; ECF No. 13 at 5–7.) As such, the Court does not address Count II under the present analysis.

"The provision creating a private cause of action for a consumer under the WVCCPA is found in section 46A-5-101(1)." *Ballard v. Bank of Am., N.A.*, Civil Action No. 2:12–2496, 2013 WL 5963068, at *9 (S.D. W. Va. Nov. 7, 2013). The version of Section 46A-5-101 applicable in the present action provides the following, in pertinent part:

> If a creditor has violated the provisions of this chapter applying to collection of excess charges, . . . statements of account and evidences of payment, . . . illegal, fraudulent or unconscionable conduct, any prohibited debt collection practice, . . . and renegotiation by regulated consumer lender of loan discharged in bankruptcy, *the consumer* has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty . . . .

W. Va. Code § 46A-5-101(1) (1996) (emphasis added). "As that text shows, a plaintiff must be a 'consumer' in order to maintain a private cause of action under the WVCCPA." *Ballard*, 2013 WL 5963068, at *9; *see also McNeely v. Wells Fargo Bank, N.A.*, Civil Action No. 2:13–cv–25114, 2015 WL 4506556, at *3 (S.D. W. Va. July 24, 2015) ("[T]he plain language of the WVCCPA and its legislative history make clear that a plaintiff must be a consumer to bring a private cause of action under the Act." (citations omitted)). *See generally W. Va. Auto & Truck Dealers Ass'n v. Ford Motor Co.*, Civil Action No. 1:14CV32, 2014 WL 2440406, at *4 (N.D. W. Va. May 30, 2014) (noting that the WVCCPA confers statutory standing to certain plaintiffs and, "[i]n resolving the question of whether the legislature intended to confer a right of action on [a] plaintiff, '[o]ur task is essentially one of statutory construction'" (third alteration in original) (quoting *Wash.-Dulles Transp., Ltd. v. Metro. Wash. Airports Auth.*, 263 F.3d 371, 377 (4th Cir. 2001))).

The WVCCPA includes two relevant definitions of the term "consumer." *Compare* W. Va. Code § 46A-1-102(12), *with id.* § 46A-2-122(a). Section 46A-1-102(12) provides a general definition of the term "consumer" for purposes of the WVCCPA. *Ballard*, 2013 WL 5963068, at *9; *see, e.g., Gray v. Chase Bank USA, N.A.*, Civil Action No. 5:10–cv–00979, 2011 WL 4716232,

21

at *4 (S.D. W. Va. Oct. 7, 2011) (noting that the general definition of "consumer" in Section 46A-1-102(12) was "provided by the WVCCPA '[i]n addition to those definitions appearing in subsequent articles' in Chapter 46A" (alteration in original) (quoting W. Va. Code § 46A-1-102)). The definition of the term "consumer" in Section 46A-2-122(a), on the other hand, only applies to Sections 46A-2-122 through 46A-2-129(a). W. Va. Code § 46A-2-122 ("For purposes of this section and sections one hundred twenty-three, one hundred twenty-four, one hundred twenty-five, one hundred twenty-six, one hundred twenty-seven, one hundred twenty-eight, one hundred twenty-nine, and one hundred twenty-nine-a of this article, the following terms shall have the following meanings . . . .").

The Complaint includes WVCCPA claims that implicate both definitions of "consumer." (*See* ECF No. 1 ¶¶ 31–36, 48–52, 82–94.) The Court therefore addresses the application of each definition of "consumer" to Plaintiffs' claims.

## A.    The Term "Consumer" Under West Virginia Code § 46A-1-102(12)

The Complaint includes the following three WVCCPA claims brought pursuant to sections *outside of the scope* of the limited definition of "consumer" provided in Section 46A-2-122(a): (1) Count I (unconscionable contract), which alleges that Defendant "Wells Fargo fraudulently induced Plaintiffs to enter into [the Loan Agreement]" and "[the Loan] provided to Plaintiffs was induced by unconscionable conduct" in violation of West Virginia Code § 46A-2-121,[12] (*id.*

---

[12] As noted above, the Court construes Count I (unconscionable contract) as constituting both common-law and WVCCPA causes of action. Insofar as Count I constitutes a claim under the WVCCPA, the Court also construes it as a cause of action pursuant to Section 46A-2-121. (*See* ECF No. 10 at 9 (providing Plaintiffs' opposition briefing, which cites West Virginia Code § 46A-2-121 in support of the assertion that the Complaint "make[s] out a claim for unconscionable inducement")); *see also* W. Va. Code § 46A-2-121 (providing a cause of action for "unconscionability" and "inducement by unconscionable conduct"); *Orlando v. Fin. One of W. Va., Inc.*, 369 S.E.2d 882, 884–85 (W. Va. 1988) ("[T]he legislature, by the express language of [West Virginia] Code, 46A-5-101(1), created a cause of action for consumers and imposed a civil liability on creditors who include unconscionable terms that violate [West Virginia] Code, 46A-2-121 in consumer agreements." (quoting *U.S. Life Credit Corp. v. Wilson*,

¶¶ 31–36); (2) Count IV (illegal fees), which avers that Defendant "Wells Fargo routinely assessed late fees in violation of the agreement and [*West Virginia*] *Code* § 46A-2-115," (*id.* ¶¶ 48–49); and (3) Count XI (refusal to provide account statement), which alleges that Defendants "failed and refused to provide an account history to Plaintiffs in violation of [*West Virginia*] *Code* § 46A-2-114(2)" and "failed and refused to provide a statement of default charges to Plaintiffs in violation of [*West Virginia*] *Code* § 46A-2-115(d)," (*id.* ¶¶ 92–94). The Court therefore applies the general definition of "consumer" provided in Section 46A-1-102(12) to these three claims. *See, e.g.*, *Ballard*, 2013 WL 5963068, at *9–10 (applying the definition of "consumer" provided in Section 46A-1-102(12) to claims brought pursuant to Sections 46A-2-115(c) and 46A-2-114(2)).

Section 46A-1-102(12) defines a "consumer," in pertinent part, as "a natural person who incurs debt pursuant to a . . . consumer loan." The WVCCPA then defines "consumer loan" as the following:

> "Consumer loan" is a loan made by a person regularly engaged in the business of making loans in which:
>
> (a) The debtor is a person other than an organization;
>
> (b) The debt is incurred primarily for a personal, family, household or agricultural purpose;
>
> (c) Either the debt is payable in installments or a loan finance charge is made; and
>
> (d) Either the principal does not exceed forty-five thousand dollars or the debt is secured by an interest in land or a factory-built home as defined in section two, article fifteen, chapter thirty-seven of this code.

W. Va. Code § 46A-1-102(15). Courts found that, in the context of written debt instruments, the definition of "consumer" in Section 46A-1-102(12) only includes parties to the agreement who sign the instrument and correspondingly incur the debt. *See, e.g.*, *Ballard*, 2013 WL 5963068, at

---

301 S.E.2d 169, 170 (W. Va. 1982))).

*9 (finding that the plaintiff did "not meet the general definition of consumer because . . . he is not a party to the [n]ote or [d]eed of [t]rust and has not incurred a debt pursuant to a loan with [the defendant]" (citing *Arnold v. Palmer*, 686 S.E.2d 725, 732 (W. Va. 2009)); *In re Spurlock*, Civil Action No. 3:10–1252, 2011 WL 2469830, at *6 (S.D. W. Va. June 17, 2011) (applying the definition of "consumer" in Section 46A-1-102(12) and finding that, "[a]s [the plaintiff] did not sign for the [home] loan, she cannot assert a claim as a consumer").

The Court finds that Plaintiffs meet the Section 46A-1-102(12) definition of "consumer." The Complaint alleges that Plaintiffs "are natural persons" who "entered into [a home] loan" with Defendant Wells Fargo "on or about December 23, 2004" that was payable in installments and secured by real property—the home. (ECF No. 1 ¶¶ 8, 16, 22–23.) These allegations clearly satisfy the definition of "consumer" under Section 46A-1-102(12). *See* W. Va. Code § 46A-1-102(12); *see also id.* § 46A-1-102(15) (providing the relevant definition of "consumer loan").

Accordingly, the Court **DENIES** the Motion to Dismiss insofar as it argues that Plaintiffs do not have standing to bring Counts I, IV, and XI.

## B.     The Term "Consumer" Under West Virginia Code § 46A-2-122(a)

The Complaint includes the following two WVCCPA claims brought pursuant to sections that fall *within the scope* of the definition of "consumer" provided in Section 46A-2-122(a): (1) Count V (violations of the WVCCPA), which alleges that "Defendants have engaged in repeated violations of Article 2 of the WVCCPA, including, but not limited to . . . making misrepresentations in the collection of a debt in violation of [*West Virginia*] *Code* § 46A-2-127 . . . and . . . using unfair or unconscionable means to collect a debt from Plaintiffs in violation of [*West Virginia*] *Code* § 46A-2-128(e) . . . . ," (ECF No. 1 ¶¶ 50–52); and (2) Count X (negligent

24

and/or fraudulent misrepresentations in debt collection), which alleges that "Defendants made misrepresentations in an effort to collect on a debt . . . in violation of [*West Virginia*] *Code* § 46A-2-127," (*id.* ¶¶ 82–91). As such, the Court applies the definition of "consumer" in Section 46A-2-122(a) when analyzing these claims. *See* W. Va. Code § 46A-2-122 (providing definitions that apply to Sections 46A-2-122 through 46A-2-129(a)).

Section 46A-2-122(a) defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." The term "allegedly obligated," as used in this Section, "extends the reach of the [WVCCPA] to certain collection activities conducted without regard to whether the debt is actually owed . . . where the lender repeatedly asserted that the debtor was required to pay the debt although the debtor had no personal obligation." *McGuire v. Jim Walter Homes, LLC*, Civil Action No. 5:14–cv–14299, 2014 WL 5149725, at \*7 (S.D. W. Va. Oct. 14, 2014) (quoting *Fabian v. Home Loan Ctr., Inc.*, No 5:14–CV–42, 2014 WL 1648289, at \*6 (S.D. W. Va. Oct. 14, 2014)); *see also McNeely v. Wells Fargo Bank, N.A.*, Civil Action No. 2:13–cv–25114, 2015 WL 4506556, at \*3 (S.D. W. Va. July 24, 2015) ("Courts consider a person 'allegedly obligated' to pay a debt when the creditor has 'represented to [him] that [he is] personally liable on the debt.'" (alterations in original) (citation omitted)).

Defendants argue that "Plaintiffs were discharged from Chapter 7 bankruptcy on August 29, 2011" and, as such, "Plaintiffs are not 'consumers' and lack standing" to bring these claims. (ECF No. 7 at 8.) In their responsive briefing, Plaintiffs do not contest that they discharged the Loan Debt through bankruptcy proceedings. (*See* ECF No. 10.) However, Plaintiffs argue that they have standing because "Defendant Wells Fargo has attempted [to] collect the [Loan Debt] from them." (*Id.* at 11.)

25

The Court disagrees with Plaintiffs' contention. As Defendants correctly note, the bankruptcy court's Order Discharging Debtor, dated August 29, 2011, discharged Plaintiffs' personal obligation to repay the Loan Debt. (*See In re Charles Lyndon Hanshaw & Charlotte Sue Hanshaw*, 2:10-bk-20918, ECF No. 14 (Bankr. S.D. W. Va.) (providing the "Schedule D – Creditors Holding Secured Claims," which lists the Loan as a secured claim in Plaintiffs' bankruptcy proceedings); *id.*, ECF No. 108 (constituting the order granting Plaintiffs "a discharge under section 727 of title 11, United States Code . . . (the Bankruptcy Code)").) Plaintiffs therefore were not personally obligated to repay the Loan Debt following this date. *See, e.g.*, *Fabian*, 2014 WL 1648289, at *5 (noting that the plaintiffs were "no longer 'obligated' to pay the debt within the meaning of § 46A-2-122(a), as [the plaintiffs'] personal obligation to pay was discharged in their bankruptcy").

As to whether Plaintiffs were allegedly obligated to repay the Loan Debt, the Complaint alleges that, following Plaintiffs "seek[ing] bankruptcy protection on September 27, 2010," "Plaintiffs asked [Defendant] Wells Fargo to modify their loan" and "Plaintiffs entered into trial payment plans at least five different times." (ECF No. 1 ¶¶ 23–25.) However, according to the Complaint, "each time after Plaintiffs made several payments . . . pursuant to the trial plan, [Defendant] Wells Fargo would reject the loan modification." (ECF No. 1 ¶ 26; *cf. id.* ¶ 3 ("Defendants engaged in abusive and illegal loan servicing, including refusing to honor Plaintiffs' payment plan to become current on the loan, threatening Plaintiffs with illegal fees, misrepresenting that they would provide them with a loan modification, and then pursuing foreclosure on their home."); *id.* ¶ 5 ("[W]hile simultaneously reassuring Plaintiffs that their modification was being processed, Defendants sent Plaintiffs' home into foreclosure. Even after

sending a notice of foreclosure, Defendants continued to assure Plaintiffs that alternatives to foreclosure were available.").) However, the Complaint is completely devoid of any allegations that Defendants contacted Plaintiffs after the date of the bankruptcy discharge in an attempt to recover the Loan Debt, or to indicate that Plaintiffs were still personally obligated to repay the Loan Debt. (*See* ECF No. 1.) Absent these allegations, the Court finds that Plaintiffs are not allegedly obligated to repay the Loan Debt. *See, e.g.*, *Fabian*, 2014 WL 1648289, at *5–6 (finding that the plaintiffs were "not 'consumers' within the meaning of § 46A-2-122(a)" where the "plaintiffs' personal obligation to repay [the debt] was discharged in bankruptcy" and the plaintiffs "made no allegation that [the defendants] . . . represented to plaintiffs that they remain personally liable on the debt"); *Ballard v. Bank of Am., N.A.*, Civil Action No. 2:12–2496, 2013 WL 5963068, at *11 (S.D. W. Va. Nov. 7, 2013) (finding that the plaintiff was not allegedly obligated to pay a debt where, following the plaintiff discharging the debt in bankruptcy, the debt holder did not contact the plaintiff and indicate that the plaintiff still held a personal obligation to pay the debt); *cf. McGuire*, 2014 WL 5149725, at *7 (finding a material question of fact as to whether the plaintiffs were allegedly obligated to pay a debt—which they discharged through bankruptcy—where "the record reveal[ed] that the [plaintiffs] were repeatedly contacted by [the defendant] . . . seeking payment on the account after their bankruptcy"); *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F. Supp. 2d 788, 797–98 (S.D. W. Va. 2010) (finding a material question of fact and denying the defendant's motion for summary judgment where the defendant treated the plaintiff—who held no personal obligation repay the debt—"as though he was obligated to pay on the loans by contacting him with repeated collection attempts"). *See generally*

*Fabian*, 2014 WL 1648289, at *5 ("The choice to continue making payments in order to retain collateral does not give rise to an 'alleged obligation.'" (citing *Ballard*, 2013 WL 5963068)).

As Plaintiffs are not obligated or allegedly obligated to repay the Loan Debt, the Court finds that they are not "consumers," as that term is defined in Section 46A-2-122(a). *See, e.g.*, *Ballard*, 2013 WL 5963068, at *11 ("[A]n actual or alleged obligation to pay is a critical element of the definition of 'consumer' found in section 122(a)."). The Court therefore finds that Plaintiffs lack standing to bring the claims embodied in Counts V and X. *See, e.g.*, *McNeely v. Wells Fargo Bank, N.A.*, Civil Action No. 2:13–cv–25114, 2015 WL 4506556, at *3 (S.D. W. Va. July 24, 2015) ("[T]he plain language of the WVCCPA and its legislative history make clear that a plaintiff must be a consumer to bring a private cause of action under the Act." (citations omitted)). *See generally* W. Va. Code § 46A-2-122(a) (providing the definition of "consumer" applicable to Sections 46A-2-122 through 46A-2-129(a)). Accordingly, the Court **GRANTS** the Motion to Dismiss insofar as it seeks dismissal of Counts V and X based on Plaintiffs' lack of standing to bring these claims. However, the Court finds that it is appropriate to dismiss these claims without prejudice.[13] *See, e.g.*, *Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985)

---

[13] Plaintiffs state the following in their opposition briefing to the Motion to Dismiss:

> To the extent that the Court deems it necessary to do so, Plaintiffs request the opportunity to amend their Complaint to add more detail to the illegal debt collection claims to demonstrate that these violations have continued to occur in the last few years. For example, Defendants have continued to send monthly billing invoices, and [have] sent them several written debt collection communications after they were aware Plaintiffs were represented by counsel. Plaintiffs further note that discovery is needed to develop a factual record of the dates of such communications and acceleration notices.

(ECF No. 10 at 6 n.3.) As discussed above, the Court will not consider this extraneous information—which was not alleged in the Complaint—when ruling on the Motion to Dismiss. *See, e.g.*, *Cunningham Energy, LLC v. Outman*, Civil Action No. 2:13–cv–20748, 2013 WL 5274361, at *4 (S.D. W. Va. Sept. 18, 2013) (noting that a court typically "cannot consider allegations made outside of the pleadings" when considering a motion to dismiss). If Plaintiffs seek to amend their Complaint to provide additional color to their WVCCPA claims, they may file a motion requesting this relief. *See, e.g.*, Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice. That determination is within the district court's discretion.").

## VI.  Breach of Contract Claims

The Complaint includes two breach of contract claims: Counts VI (breach of contract – deed of trust) and VII (breach of contract – payment plan). (ECF No. 1 ¶¶ 53–67.) Defendants argue that both counts fail to state a claim because (1) "Plaintiffs never point to a specific contractual provision breached by Defendants;" and (2) insofar as these breach of contract claims raise an independent good faith and fair dealing theory of liability, "West Virginia law does not recognize an independent cause of action for a breach of the duty of good faith and fair dealing separate and apart from a breach of contract claim." (ECF No. 7 at 8.) For the following reasons, the Court disagrees.

### A.    Count VI—Breach of Contract (Deed of Trust)

Count VI is a breach of contract claim allegedly arising out of the parties' performance under the Loan Agreement. (*See* ECF No. 1 ¶¶ 53–60.) Defendants argue that this Count fails to state a claim for either an express breach of contract, or a breach of the implied covenant of good faith and fair dealing. (*See* ECF No. 7 at 8–9; ECF No. 13 at 7–8.) The Court addresses each argument, in turn.

#### 1.    Express Breach of Contract

Defendants first argue that Count VI fails to state a claim for an express breach of contract. (*See* ECF No. 7 at 8; ECF No. 13 at 7–8.) "To avoid dismissal of a breach of contract claim under Rule 12(b)(6), West Virginia law requires: 'the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or

obligations under the contract; and that the plaintiff has been injured as a result.'" *Kennedy v. BAC Home Loans Servicing, LP*, Civil Action No. 3:13–11401, 2013 WL 5274365, at *6 (S.D. W. Va. Sept. 18, 2013) (quoting *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009)). "For a claim of breach of contract to be sufficient, 'a plaintiff must allege in his complaint the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'" *Id.* (quoting *Exec. Risk Indem., Inc.*, 681 F. Supp. 2d at 714).

Defendants' only argument as to why Count VI fails to state a claim for an express breach of contract is that the Complaint "never point[s] to a specific contractual provision breached by Defendants." (ECF No. 7 at 8.) Count VI alleges that "Plaintiffs' contract with Defendants (the deed of trust) provides that before acceleration and foreclosure Defendants must give Plaintiffs notice of the default, a description of the action required to cure the default, and an opportunity to cure the default." (ECF No. 1 ¶ 55.) This Count further alleges that "Defendants breached their duties under the contract, including their duties to exercise their discretion in good faith, and thereby breached the contract by: (a) discouraging Plaintiffs from providing payments to their account; (b) failing to properly apply Plaintiffs' loan payments; and (c) assuring Plaintiffs that Defendants were working out a loan modification and simultaneously referring the home to foreclosure." (*Id.* ¶ 58.)

These allegations, while sparse, do not provide that Defendants only generally breached the terms of the Loan Agreement. Rather, they identify contractual obligations allegedly held by Defendants and then list ways in which Defendants purportedly breached these obligations. (*See id.* ¶¶ 55 & 58.) At this early stage of the case and drawing all reasonable inferences in Plaintiffs'

favor, the Court finds that Count VI states a claim for express breach of contract arising out of the parties' performance under the Loan Agreement. *See, e.g.*, *Nowlan v. JP Morgan Chase Bank, N.A.*, Civil Action No. 2:11–cv–00404, 2012 WL 1029315, at *4 (S.D. W. Va. Mar. 26, 2012) (finding that the plaintiff's "allegation that [the defendant] failed to properly apply [the plaintiff's] loan payments may constitute an express breach of the deed of trust"); *cf. Kennedy*, 2013 WL 5274365, at *6–7 (providing an opportunity for the plaintiffs to amend their breach of contract claim where the complaint failed to identify contractual obligations held by the defendant "which actually were violated by [the defendant's] actions"); *Cincinnati Ins. Co. v. Cost Co.*, Civil Action No. 5:10CV7, 2010 WL 1902995, at *3 (N.D. W. Va. May 11, 2010) (dismissing a breach of contract claim where the plaintiff failed to identify a breach of a contractual obligation); *Clendenin v. Wells Fargo Bank, N.A.*, Civil Action No. 2:09–cv–00557, 2009 WL 4263506, at *3–4 (S.D. W. Va. Nov. 24, 2009) (dismissing the plaintiffs' express breach of contract claim without prejudice where the complaint failed to identify in either general or specific terms the contractual provisions allegedly breached by the defendant).

Accordingly, the Court **DENIES** the Motion to Dismiss insofar as it seeks dismissal of Count VI for failure to state a claim under an express breach of contract theory of liability.

2.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants next argue that the Court should dismiss VI insofar as it provides a claim for a breach of the duty of good faith and fair dealing. (ECF No. 7 at 8–9.) West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) (quoting *Hoffmaster v. Guiffrida*, 630 F. Supp. 1289, 1290

(S.D. W. Va. 1986)). However, "the West Virginia Supreme Court of Appeals has 'declined to recognize an independent claim for a breach of the common law duty of good faith,' and has instead held that such a claim sounds in breach of contract." *Corder v. Countrywide Home Loans, Inc.*, Civil Action No. 2:10–0738, 2011 WL 289343, at *3 (S.D. W. Va. Jan. 26, 2011) (quoting *Doyle v. Fleetwood Homes of Va.*, 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009)); *see also Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007) ("[I]t has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim." (citation omitted)). As such, "a claim for breach of the implied covenant of good faith and fair dealing can only survive if the plaintiff pleads an express breach of contract claim." *Staats v. BAC Home Loans Servicing, LP*, Civil Action No. 3:10–CV–68, 2011 WL 12451606, at *8 (N.D. W. Va. June 7, 2011) (citing *Clendenin*, 2009 WL 4263506, at *5); *see also Clendenin*, 2009 WL 4263506, at *5 ("Because West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, this claim will live or die by the [express breach of contract] claim in [the same count of the complaint]."). Furthermore, "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those [expressly] set out in the contract." *Barn-Chestnut, Inc. v. CFM Dev. Corp.*, 457 S.E.2d 502, 509 (W. Va. 1995).

Count VI alleges that Defendants acted in bad faith by (1) "discouraging Plaintiffs from providing payments to their account," (2) "failing to properly apply Plaintiffs' loan payments," and (3) "assuring Plaintiffs that Defendants were working out a loan modification and simultaneously referring the home to foreclosure." (ECF No. 1 ¶ 58.) This Court previously found that identical allegations were "related to the express breach of contract claim" and stated a viable

32

breach of contract claim under a good faith and fair dealing theory of liability. *See Nowlan*, 2012 WL 1029315, at *4 (denying the defendant's motion to dismiss the plaintiff's breach of contract claim under a good faith and fair dealing theory where the complaint alleged that the defendant "breached its duties under the [deed of trust], including its duties to exercise its discretion in good faith . . . by . . . (a) discouraging [the plaintiff] from providing payments to his account; (b) failing to properly apply [the plaintiff's] loan payments; and (c) assuring [the plaintiff] that [the defendant] was working out a loan modification and simultaneously referring the home to foreclosure"). The Court finds that—given that Count VI states a claim for an express breach of contract theory of liability—the allegations in Count VI relating to the implied covenant of good faith and fair dealing are similarly sufficient to overcome a motion to dismiss.

Accordingly, the Court **DENIES** the Motion to Dismiss, insofar as it requests dismissal of the implied covenant of good faith and fair dealing claim provided in Count VI.

## B.   Count VII—Breach of Contract (Payment Plan)

Defendants next move to dismiss Count VII on the same grounds—(1) that Plaintiffs fail to identify a specific provision of an agreement Defendants allegedly violated; and (2) this Count fails to state a claim under a good faith and fair dealing theory of breach of contract. (*See* ECF No. 7 at 8–9; ECF No. 13 at 7–8.) The Court again disagrees.

### 1.   Express Breach of Contract

Under West Virginia law, "the requisite express breach of contract claim can be based upon a provision in the deed of trust, . . . or upon a new contract to modify . . . ." *Smallwood v. Sovereign Bank, F.S.B.*, Civil Action No. 3:11–CV–87, 2012 WL 243744, at *8 (N.D. W. Va. Jan. 25, 2012) (citation omitted); *see also Staats*, 2011 WL 12451606, at *8 (providing the same

statement). As noted above, "[f]or a claim of breach of contract to be sufficient, 'a plaintiff must allege in his complaint the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'" *Kennedy v. BAC Home Loans Servicing, LP*, Civil Action No. 3:13–11401, 2013 WL 5274365, at *6 (S.D. W. Va. Sept. 18, 2013) (quoting *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009)).

Defendants do not contest the Complaint's allegations that the parties entered into the Loan-Modification Agreements. (*See* ECF No. 7 at 8–9; ECF No. 13 at 7–8.) Rather, Defendants argue that Count VII fails to state a claim for express breach of contract because it does not "specify contractual duties which Defendants could have breached through any of their alleged acts." (ECF No. 13 at 7–8.)

Count VII provides the following pertinent allegations: (1) "Plaintiffs entered into several contracts with Defendants regarding payment modifications on their loan;" (2) "Defendants promised that Plaintiffs' loan payment would be permanently modified to a lower payment per month if they paid an agreed-upon (lower) amount per month in loan payments for a three month trial period;" (3) "[a]s instructed, Plaintiffs complied with the terms of the [Loan-Modification Agreements] and paid the trial payment amounts;" and (4) "Defendants breached the contract by refusing to permanently modify Plaintiffs' loan payments as promised." (ECF No. 1 ¶¶ 62–65.) Contrary to Defendants' assertion, these allegations identify the relevant portion of the Loan-Modification Agreements that Defendants purportedly breached—Defendants' promise to lower Plaintiffs' payments. (*Id.* ¶ 63.) Furthermore, Count VII also alleges that Plaintiffs performed under the Loan-Modification Agreements and Defendants nonetheless breached their

promise to lower Plaintiffs' payments. (*Id.* ¶¶ 64–65.) The Court finds that, for purposes of the present Motion to Dismiss, these allegations are sufficient to state an express breach of contract claim. *See, e.g.*, *Koontz v. Wells Fargo, N.A.*, Civil Action No. 2:10–cv–00864, 2011 WL 1297519, at \*10 (S.D. W. Va. Mar. 31, 2011) (finding that the plaintiff stated a claim for express breach of contract, "even in the absence of a writing," where the "complaint allege[d] . . . the existence of a definite agreement," "that [the plaintiff] fully performed her side of the alleged agreement," and "that [the plaintiff's] payments were accepted by [the defendant]").

Accordingly, the Court **DENIES** the Motion to Dismiss, insofar as it seeks dismissal of the express breach of contract claim in Count VII.

### 2.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that Count VII also fails to state a claim under the theory of the implied covenant of good faith and fair dealing "because West Virginia does not recognize an independent claim for breach of the duty of good faith and fair dealing." (ECF No. 7 at 8.) However, as noted above, the Court finds that Count VII states a claim for express breach of contract based on the Complaint's allegations that Defendants breached the Loan-Modification Agreements "by refusing to permanently modify Plaintiffs' loan payments as promised," despite Plaintiffs complying with the terms of these agreements. (*See* ECF No. 1 ¶¶ 63–65.) Courts have found that these allegations are sufficient to state a claim for breach of contract under the theory of the implied covenant of good faith and fair dealing. *See, e.g.*, *Wittenberg v. First Indep. Mortg. Co.*, Civil Action No. 3:10–CV–58, 2011 WL 1357483, at \*20 (N.D. W. Va. Apr. 11, 2011) ("[T]his [c]ourt finds that the plaintiff has stated an express breach of contract claim by alleging that Wells Fargo denied a permanent loan modification even though it had promised one if she paid three trial

payments. In addition, . . . this [c]ourt finds that the plaintiff has stated a breach of the implied covenant of good faith and fair dealing based upon the same allegation."); *Warden v. PHH Mortg. Corp.*, Civil Action No. 3:10–CV–75, 2010 WL 3720128, at *6 (N.D. W. Va. Sept. 16, 2010) ("[T]he [c]ourt finds that the plaintiffs have stated a valid breach of contract claim, alleging as the grounds for recovery . . . that the defendants breached the implied covenant of good faith and fair dealing. Specifically, the plaintiffs have sufficiently alleged that the defendants exercised their discretion to deny a loan modification and instead seek foreclosure in bad faith."). The Court similarly finds that Count VII states a claim for breach of contract under a good faith and fair dealing theory of liability. *See, e.g.*, *Mullins v. GMAC Mortg., LLC*, Civil Action No. 1:09–cv–00704, 2011 WL 1298777, at *3 (S.D. W. Va. Mar. 31, 2011) ("[S]ince the court will allow the plaintiffs' express breach of contract claim to proceed, the court will also allow the plaintiffs' breach of implied covenant to act in good faith claim to go forward as well.").

Accordingly, the Court **DENIES** the Motion to Dismiss insofar as it seeks dismissal of Count VII for failure to state a claim under an implied covenant of good faith and fair dealing theory of liability.

## VII.  *Negligence Claim*

Finally, Defendants argue that the Court should dismiss Count IX (negligence) "because . . . recovery in tort is barred when obligations and liability stem solely from a contract." (ECF No. 7 at 9.) The Court agrees.

"In order to establish a negligence claim in West Virginia, a plaintiff is required to prove: (1) that the defendant owed him a legal duty; (2) that the defendant breached the duty; (3) that the plaintiff was injured; and (4) that the defendant's negligence proximately caused the injury." *Byers*

36

*v. Green Tree Servicing, LLC*, Civil Action No. 2:14–cv–15751, 2015 WL 917852, at *2 (S.D. W. Va. Mar. 3, 2015) (quoting *Neely v. Belk, Inc.*, 668 S.E.2d 189, 197 (W. Va. 2008)); *see also Blackburn v. Consumer Portfolio Servs., Inc.*, Civil Action No. 2:11–cv–00401, 2012 WL 1679796, at *2 (S.D. W. Va. May 14, 2012) ("To prevail on a negligence claim, 'the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff.'" (quoting *Daniels v. JP Morgan Chase & Co.*, Civil Action No. 2:11–cv–00045, 2011 WL 2489938, at *3 (S.D. W. Va. June 21, 2011))). Under West Virginia law, a plaintiff "cannot maintain an action in tort for an alleged breach of a contractual duty." *Lockhart v. Airco Heating & Cooling, Inc.,* 567 S.E.2d 619, 624 (W.Va.2002). Instead, "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation. *Id.* at 620. The West Virginia Supreme Court of Appeals referred to the type of relationship that gives rise to tort liability as a "special relationship" between the parties. *See, e.g., Aikens v. Debow*, 541 S.E.2d 576, 589 (W.Va.2000). "The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general." *Id.* "In the lender-borrower context, a special relationship may exist where a lender performs services not normally provided by a lender to a borrower." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 839 (S.D. W. Va. 2014) (quoting *O'Brien v. Quicken Loans, Inc.*, Nos. 2:12–cv–5138, 2:12–cv–5262, 2013 WL 2319248, at *10 (S.D. W. Va. May 28, 2013)). "The possession of information unique to the lender can also indicate a special relationship." *Id.* (citation omitted).

Count IX alleges that Defendants breached two duties owed to Plaintiffs: (1) "a duty to act with reasonable care in the servicing of Plaintiffs' account;" and (2) "a duty to Plaintiffs to provide them with accurate information about the status of their loan account and to provide accurate notice of any foreclosure action." (ECF No. 1 ¶¶ 74 & 76.) These duties undoubtedly arose, if at all, solely out of a customary relationship between a lender and a borrower and do not implicate any relationship where Defendants performed services not normally provided by a lender to a borrower. *See, e.g.*, *Ranson v. Bank of Am., N.A.*, Civil Action No. 3:12–5616, 2013 WL 1077093, at *6 (S.D. W. Va. Mar. 14, 2013) (finding that "a duty to provide accurate loan information is a normal service in a lender-borrower relationship" and does not create a "special relationship"); *Daniels*, 2011 WL 2489938, at *3 (dismissing the plaintiffs' negligence claim, which alleged, in part, "that the defendants negligently and recklessly managed the plaintiffs' loan account"); *cf. Glascock v. City of Nat'l Bank of W. Va.*, 576 S.E.2d 540, 546 (W. Va. 2002) (holding that "where a lender making a construction loan to a borrower creates a special relationship with the borrower by maintaining oversight of, or intervening in, the construction process, that relationship brings with it a duty to disclose any information that would be critical to the integrity of the construction project"). The remainder of the Complaint similarly fails to provide any allegations indicating that the parties held a special relationship apart from the relationships created by the parties' contractual agreements. (*See* ECF No. 1.) Absent an allegation that Plaintiffs and Defendants held a special relationship separate and apart from the parties' agreements, Plaintiffs' negligence claim fails. *See, e.g.*, *Tinsley*, 4 F. Supp. 3d at 839 (dismissing the plaintiff's negligence claim where the defendant "did not endeavor to perform uncustomary services for [the plaintiff], possess information of unique relevance to [the plaintiff] in regard to this claim, or participate in any

conduct which could arguably be seen as creating a special relationship"); *Warden v. PHH Mortg. Corp.*, Civil Action No. 3:10–CV–75, 2010 WL 3720128, at *9 (N.D. W. Va. Sept. 16, 2010) (dismissing the plaintiffs' negligence claim because they "failed to plead a special relationship which creates a duty sounding in tort").

Accordingly, the Court **GRANTS** the Motion to Dismiss insofar as it requests dismissal of Count IX.[14]

## VIII.   *Conclusion*

For the reasons discussed herein, the Court **DENIES** the Motion to Dismiss, (ECF No. 6), insofar as it requests dismissal of Counts I–IV, VI–VIII, and XI of the Complaint. The Court **GRANTS** the Motion to Dismiss, (*id.*), insofar as it seeks dismissal of Counts V, IX, and X of the Complaint. Accordingly, the Court **DISMISSES** Counts V and X **WITHOUT PREJUDICE**. The Court further **DISMISSES** Count IX **WITH PREJUDICE**. Finally, the Court **DENIES AS MOOT** the Motion to Stay. (ECF No. 21.)

---

[14] Defendants also move to dismiss Count II of the Complaint, which alleges that Defendant Deutsche Bank is liable as an assignee pursuant to West Virginia Code § 46A-2-102. (ECF No. 1 ¶¶ 37–39.) Defendants argue that, "[a]s Plaintiffs' Complaint fails to state a claim upon which relief should [sic] be granted, [Defendant Deutsche Bank] should be dismissed from the Complaint as an assignee." (ECF No. 7 at 11.) However, as discussed herein, many of the Complaint's claims—including some claims pursuant to the WVCCPA—survive the Motion to Dismiss. Accordingly, the Court **DENIES** the Motion to Dismiss insofar as it requests dismissal of Count II. *See, e.g.*, W. Va. Code § 46A-2-102(1) (providing an assignee liability provision under the WVCCPA).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          September 11, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE